AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JAN 1 6 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One Apple iPhone, Model: MQAQ2LL/A, IMEI: )
35-487309-242808-7 )
(Target Telephone 7) )

Case No. **19MJ0202**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-7

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B-7

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 846 | Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit of Drug Enforcement Administration Special Agent Brandon Pullen.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brandon Pullen, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/16/19

_____
*Judge's signature*

City and state: San Diego, California     Hon. Linda Lopez, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-7

PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846 is described below:

One Apple iPhone,
Model: MQAQ2LL/A,
IMEI: 35-487309-242808-7

("**Target Telephone #7**"). Agents seized **Target Telephone #7** from the person of Jasmine ROJAS incident to her arrest on October 22, 2018, outside 1953 Stylus St #107, Chula Vista, CA. **Target Telephone #7** is currently in possession of the Drug Enforcement Administration, San Diego Field Office, located at 4560 Viewridge Ave., San Diego, California 92123.

## **ATTACHMENT B-7**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-7 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of April 1, 2018, to October 22, 2018:

a. tending to indicate efforts to distribute methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States;

d. tending to identify travel to or presence at locations involved in the distribution of methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846.**

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Brandon Pullen, being duly sworn, hereby state as follows:

# INTRODUCTION

1. This affidavit supports an application for a warrant to search the following cellular telephones (collectively, "**Target Telephones**"):

   a. One Apple iPhone, Model: MN6C2LL/A, IMEI: 35-381808-994887-9, seized from Angelina Gonzalez on October 22, 2018 ("Target Telephone 1"), as described further in Attachment A-1, which is incorporated by reference herein;

   b. One Apple iPhone, Model: MQCR2LL/A, IMEI: 35-484709-421112-1, seized from Angelina Gonzalez on October 22, 2018 ("Target Telephone 2"), as described further in Attachment A-2, which is incorporated by reference herein;

   c. One Apple iPhone, Model: MRTE2LL/A, IMEI: 35-483009-1651911, seized from Angelina Gonzalez on October 22, 2018 ("Target Telephone 3"), as described further in Attachment A-3, which is incorporated by reference herein;

   d. One LG Cellular Telephone, Model: LGMP260, IMEI: 352130-09-824475-8, seized from 1953 Stylus St #107, Chula Vista, CA on October 22, 2018 ("Target Telephone 4"), as described further in Attachment A-4, which is incorporated by reference herein;

   e. One BQ Cellular Telephone, Model: C008053, IMEI: 358625086219500, seized from 1953 Stylus St #107, Chula Vista, CA on October 22, 2018 ("Target Telephone 5"), as described further in Attachment A-5, which is incorporated by reference herein;

   f. One LG Cellular Telephone, Model: LM-X210MA, IMEI: 356233-09-478671-9, seized from 1953 Stylus St #107, Chula Vista, CA on October 22, 2018 ("Target Telephone 6"), as described further in Attachment A-6, which is incorporated by reference herein; and

   g. One Apple iPhone, Model: MQAQ2LL/A, IMEI: 35-487309-242808-7, seized from Jasmine Rojas on October 22, 2018 ("Target Telephone 7"), as described further in Attachment A-7, which is incorporated by reference herein

1

and seized evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841(a)(1), 846 as outlined in Attachments B-1 through B-7.

2. This search supports an investigation into Jan Carlos RIVERA-Cruz, Angelina GONZALEZ, and Jasmine ROJAS following their arrest for conspiracy to distribute methamphetamine on October 22, 2018. The **Target Telephones** were seized from GONZALEZ, ROJAS, and RIVERA-CRUZ/ROJAS's apartment incident to their arrest. The **Target Telephones** are currently being stored as evidence at the Drug Enforcement Administration, San Diego Field Office, located at 4560 Viewridge Ave., San Diego, California 92123.

3. Based on the information below, there is probable cause to believe that a search of the **Target Telephones** will produce evidence of the aforementioned crimes, as described in Attachments B-1 through B-7.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Telephones**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in Title 21 United States Code and other felony offenses.

6. I am a Special Agent employed by the United States Drug Enforcement Administration (DEA), and have been so employed since April 2015. I am currently assigned to the San Diego Field Division's Enforcement Group 1/Major Mexican

2

Trafficker Task Force, and have been since August 10, 2015. I have received approximately 18 weeks of training at the DEA Academy in Quantico, Virginia. During that training, I learned how criminal enterprises are structured and how they operate. I also learned how controlled substances are manufactured, consumed, packaged, marketed and distributed. I have had formal and informal training and experience in controlled substances investigations; I have become familiar with the manner in which controlled substances, including methamphetamine, are produced, trafficked, distributed and consumed. I have received training in the identification of all types of controlled substances by sight and odor. I have participated in multiple arrests for controlled substance violations. In the course of my duties, I have become familiar with the manners and techniques of traffickers in controlled substance as practiced locally.

7. As a law enforcement officer, I have received formal training, as well as on-the-job experience and training, relative to the investigation of the importation, transportation, sales, manufacturing and distribution of controlled substances. I have also participated in investigations which involved the use of electronic surveillance techniques.

8. I have investigated illicit narcotic and controlled substance trafficking that has resulted in arrests and indictments in Federal Court. I have participated in the execution of search warrants on residences and vehicles. I have also participated in undercover operations which involved the sale and purchase of controlled substances and illicit narcotics. I have participated in investigations in which drug traffickers also relied heavily upon telephone communication and other electronic devices as a means of communicating with their associates, confidential informants, cooperating individuals and undercover officers. I have interviewed individuals that have been directly and indirectly involved in the importation, transportation, distribution and manufacturing of illegal drugs, and controlled substances.

9. Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns employed by drug trafficking organizations ("DTOs"). I have also spoken with agents, as

well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of drug abuse and trafficking. With this training and experience I have become knowledgeable about the methods employed by drug traffickers to conduct their illegal activities.

10. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communication and location information with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distribution amount quantities of controlled substances, such as cocaine. Typically, load drivers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to, during and following the crossing of the narcotic load, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. From my training and experience, I am aware that narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b.    Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.    Drug smugglers and their accomplices will use cellular/mobile telephones

because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.    Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.    Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.    Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to indicate efforts to distribute methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States;

5

    c.    tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other controlled substances f in the Southern District of California and throughout the United States;

    d.    tending to identify travel to or presence at locations involved in the distribution of methamphetamine, or some other controlled substances in the Southern District of California and throughout the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

13. On October 18, 2018, U.S. Border Patrol Agents assigned to the Predictive Intelligence Targeting Team initiated surveillance of a black BMW X5 bearing California license plates as it entered the United States from Mexico at the Otay Mesa Port of Entry at approximately 6:05 p.m. The black BMW was driven by Angelina GONZALEZ. Agents observed the BMW as it drove to 1953 Stylus Street, #107, Chula Vista, California. The BMW drove into the garage of the apartment complex located at 1953 Stylus Street at approximately 6:35 p.m. Minutes later the vehicle drove out of the garage and away from the location.

14. At approximately 7:05 p.m. on October 18, 2018, while continuing to observe 1953 Stylus Street, agents observed Jan Carlos RIVERA-Cruz and Jasmine ROJAS walk out of unit 107 carrying a weighted box. RIVERA-Cruz and ROJAS got into a Toyota Corolla bearing California license plates and agents observed it drive away from the residence. Agents saw a black Volkswagen Atlas begin driving in tandem with the Toyota Corolla. Both vehicle drove down a residential street with limited lighting and agents briefly lost sight of the vehicles. Agents regained surveillance and saw the Toyota Corolla

6

and the Volkswagen Atlas driving in separate directions. The San Diego Sheriff's Office conducted a traffic stop of the Volkswagen Atlas after observing multiple traffic violations. A U.S. Border Patrol K-9 agent used his Narcotics Detection Dog to conduct an exterior sweep of the Volkswagen. The K-9 alerted to the presence of narcotics. A subsequent search of the vehicle revealed approximately 15 kilograms of cocaine. The driver of the Volkswagen was arrested charged with California drug offenses. A gents subsequently searched the Volkswagen driver's storage unit in National City, California pursuant to a state search warrant and seized additional 15 kilograms of cocaine from the storage locker.

15. Based on the seizure of approximately 30 kilograms of cocaine on October 18, 2018, Predictive Intelligence Targeting Team agents conducted additional surveillance of RIVERA-Cruz's residence at 1953 Stylus Street #107, Chula Vista, CA, on October 22, 2018. At approximately 6:51 p.m., agents observed the garage door open and RIVERA-Cruz drive his Toyota Corolla and park into a nearby open parking space. Approximately 5 minutes later, agents saw the same BMW X5 from October 18, 2018 arrive to RIVERA-Cruz's apartment building and drive into the garage. Records checks revealed that the BMW had recently crossed from Mexico into the United States. At approximately 7:05 p.m., agents saw the BMW drive out of the garage and away from RIVERA-Cruz's building. Investigators from the Border Crime Suppression Team conducted a traffic stop of the BMW based on the surveillance at RIVERA-Cruz's apartment. Investigators identified the driver as Angelina GONZALEZ, as well as two passengers: her adult son and juvenile son. A subsequent search of the BMW revealed that it had an aftermarket compartment in the trunk. Agents seized **Target Telephones 1, 2, and 3 from the BMW and GONZALEZ's person.**

16. Following the discovery of the compartment in the BMW, agents returned to 1953 Stylus Street, Chula Vista, CA, and observed RIVERA-Cruz walking out of apartment 107 carrying a weighted box. Agents saw RIVERA-Cruz get into the same Toyota Corolla as October 18, 2018. Agents maintained surveillance on the Corolla and eventually stopped RIVERA-Cruz in front of a Jack-in-the-Box located at 2015 Birch Road

7

#2700, Chula Vista, CA. RIVERA-Cruz initially denied having anything illegal in his vehicle. RIVERA-Cruz consented to a search of the Corolla. Agents then searched the vehicle and discovered approximately 10 pounds of methamphetamine inside trash bags inside a cardboard box on the floorboard of the passenger seat of the vehicle. The substances tested presumptively positive for methamphetamine. Investigators with a K-9 arrived and the K-9 conducted an exterior sniff of the Corolla. The K-9 alerted to the vehicle.

17. Simultaneously with RIVERA-Cruz's stop, investigators observed Jasmine ROJAS walking out of apartment 107 carrying a shopping bag and accompanied by a small child. Investigators encountered ROJAS, and she stated that she resided in apartment 107. ROJAS gave consent to look inside her shopping bag. Agents observed a large amount of U.S. currency, later counted and determined to be approximately $164,190 of suspected drug proceeds. ROJAS was arrested and **Target Telephone 7** was seized from ROJAS' person.

18. Agents obtained a state warrant to search 1953 Stylus Street #107, Chula Vista, CA and discovered an additional approximately 70 pounds of methamphetamine, 18 kilograms of cocaine, and 2 kilograms of fentanyl. Agents seized **Target Telephones 4, 5, and 6** from 1953 Stylus Street #107. Agents also seized tools consistent drug distribution, including a large spool of orange plastic wrap, an electronic scale, and a vacuum sealer.

19. Jan Carlos RIVERA-Cruz, Jasmine ROJAS, and Angelina GONZALEZ were arrested and charged with violating various California drug statutes, including Cal. H&S § 11370.4(a)(3), Cal. H&S § 11370.4(b)(4), Cal. H&S § 11378, Cal. H&S § 11379(a), Cal. H&S § 11351, as well as willful cruelty to a child, in violation of Cal. PC § 273A(a).

20. RIVERA-Cruz and ROJAS were put in a patrol car together. They conversed in Spanish together while the patrol doors were shut, which was recorded. RIVERA-Cruz told ROJAS not to say anything in the car. They then began whispering to each other. An agent listened to the recording from the patrol car and heard ROJAS tell RIVERA-Cruz,

8

"They got me outside with the money in my hand." RIVERA-Cruz asked, "Why didn't you leave?" ROJAS responded, "They were already here."

21. The state charges were dismissed following the U.S. Attorney's Office in the Southern District of California adopting the charges in November 2018. RIVERA-Cruz, ROJAS, and GONZALEZ currently stand charged with Conspiracy to Distribute Cocaine, Methamphetamine, and Fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 in case no. 18CR5558-DMS. All of the evidence, including the **Target Telephones**, have been transferred to DEA custody.

22. Based upon my training and experience investigating drug trafficking organizations, as well as the training and experience of other agents experienced in narcotics trafficking methods, I believe that RIVERA-Cruz, GONZALEZ, and ROJAS likely used the **Target Telephones** to coordinate the conspiracy to distribute methamphetamine, cocaine, and fentanyl. Based on my training and experience in investigating narcotics offenses, I believe that it can take several months to coordinate and develop contacts to carry out a scheme to distribute such massive quantities of narcotics. Specifically in this case, RIVERA-Cruz and ROJAS had 70 pounds of methamphetamine, 18 kilograms of cocaine, and 2 kilograms of fentanyl at their residence located at 1953 Stylus Street #107, Chula Vista, CA. This is a substantial quantity of narcotics and is consistent with having a trusted relationship with a supplier due to the large monetary value of the drugs. Additionally, agents seized $164,190 of suspected drug proceeds from ROJAS. Therefore, I believe that RIVERA-Cruz, GONZALEZ, and ROJAS have been involved in their conspiracy to distribute controlled substances for many months, and I believe there may be several months' of evidence showing planning, and preparation on the **Target Telephones**. Therefore, I respectfully request permission to search the **Target Telephones** for data beginning on April 1, 2018, up to and including October 22, 2018.

23. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Telephones** which may

identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of RIVERA-Cruz, GONZALEZ, and ROJAS such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Telephones**.

## METHODOLOGY

24. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular/mobile telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## **CONCLUSION**

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that RIVERA-Cruz, GONZALEZ, and ROJAS used their respective **Target Telephones** to facilitate violations of Title 21, United States Code, Sections 841(a)(1), 846. The **Target Telephones** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of the conspiracy to distribute methamphetamine.

25. Because the **Target Telephones** were promptly seized during the arrest of RIVERA-Cruz, GONZALEZ, and ROJAS's smuggling activities and have been securely stored, there is probable cause to believe that evidence of the conspiracy to import methamphetamine committed by RIVERA-Cruz, GONZALEZ, and ROJAS continues to exist on the **Target Telephones**.

//
//
//
//
//

WHEREFORE, I request that the court issue a warrant authorizing DEA Special Agents and/or other federal and state law enforcement officers to search the items described in Attachments A-1 to A-7, and the seizure of items listed in Attachments B-1 to B-7 using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Brandon Pullen
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this __16__ day of January, 2019.

HONORABLE LINDA LOPEZ
UNITED STATES MAGISTRATE JUDGE

12